**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Jose Luis Velazquez, III

v. Case No. 25-cv-269-SM-AJ

FCI Berlin, Warden

# REPORT AND RECOMMENDATION

Self-represented Petitioner, Jose Luis Velazquez III, filed a Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2241, while he was incarcerated at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin").[1] Velazquez is challenging the Federal Bureau of Prisons' ("BOP's") refusal to transfer him to Pennsylvania state custody to adjudicate an alleged violation of his parole in a Pennsylvania state court criminal case. See Pet. (Doc. No. 1, at 8).

Before the undersigned magistrate judge for consideration and a recommendation as to disposition is the Respondent's Motion for Summary Judgment (Doc. No. 6). The Petitioner objects. See Doc. No. 8. For the reasons that follow, the district judge should grant the Respondent's Motion for Summary Judgment, dismiss the Petition, and direct the Clerk to enter judgment and close this case.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a

[1] Mr. Velazquez is currently incarcerated at the Federal Medical Center Butner II in Butner, North Carolina.

matter of law." Fed. R. Civ. P. 56(a); R.I. Truck Ctr., LLC v. Daimler Trucks N. Am., LLC, 180 F.4th 365, 371 (1st Cir. 2026) (citation omitted). A factual dispute "is genuine 'if the evidence would enable a reasonable factfinder to decide the issue in favor of either party.'" Alicea v. Cincinnati Inc., 166 F.4th 245, 253 (1st Cir. 2026) (citation omitted). "A fact is 'material' if it 'has the capacity to change the outcome of the [factfinder's] determination.'" Id. (citation omitted). When ruling on a motion for summary judgment, the court "view[s] the undisputed facts in the light most favorable to the summary judgment nonmovant . . . and draw[s] all reasonable inferences in [the nonmovant's] favor." Hernández v. Blanche, 181 F.4th 149, 163 (1st Cir. 2026).

When objecting to a motion for summary judgment, the nonmovant must "'with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor.'" Alam & Sarker, LLC v. United States, 113 F.4th 153, 161–62 (1st Cir. 2024) (citation omitted). "To make this showing, [t]he nonmovant must point to materials of evidentiary quality . . . and such materials must frame an issue of fact that is more than merely colorable." Id. at 162 (internal quotation marks and citations omitted). "'[S]peculation about mere possibilities, without more, is not enough to stave off summary judgment.'" Alicea, 166 F.4th at 259 (citation omitted).

## Background

Velazquez was convicted of criminal offenses in Pennsylvania state court, in Commonwealth v. Velazquez, No. CP-45-CR-0001071-2013 (Ct. Com. Pl., Lackawanna Cty., Penn.) ("PA Criminal Case"). The Pennsylvania state court sentenced Velazquez to a term of incarceration, upon completion of which Velazquez was released on parole.

Pennsylvania authorities arrested Velazquez on October 29, 2015, on a parole violation, and detained him in a county facility pending resolution of his parole violation. Pet. (Doc. No. 1, at 6).

Also on October 29, 2015, the United States Marshals Service ("USMS") sought a Writ of Habeas Corpus Ad Prosequendum ("WHCAP") in the United States District Court for the Middle District of Pennsylvania, in order to take temporary custody of Velazquez to resolve a pending federal criminal case, United States v. Velazquez, No. 3:15-cr-00214-MEM-2 (M.D. Pa.) ("Federal Criminal Case"). See Oct. 29, 2015 Pet. for WHCAP, Fed. Crim. Case (ECF No. 44) (Doc No. 6-2). The Middle District of Pennsylvania granted the Petition and issued the requested WHCAP on October 30, 2015. See Fed. Crim. Case (ECF No. 45). The WHCAP, in addition to authorizing the USMS to take Velazquez into federal custody to resolve the Federal Criminal Case, directed the United States to return Velazquez to Pennsylvania state custody "at the conclusion of [the Federal Criminal Case], including sentencing." Id. On or before November 3, 2015, the USMS took custody of Velazquez pursuant to the WHCAP and transferred him to federal custody. Id. (ECF No. 46). At the time the USMS took custody of Velazquez, he had not yet resolved his parole violation in the PA Criminal Case. [2]

---

[2] Velazquez makes several statements in the court record indicating that he may have been subject to more than one parole violation and may have been sentenced on one or more such violations prior to being transferred to federal custody. For example, Velazquez states:

> I was arrested on or about 10/29/2015 for absconding from state by local police and PA state parole committed me to Lackawanna County Prison PVC! . . . State parole gave me my violation! Based on the information mentioned above. . . . I was sentenced to six months in-house for the

After his transfer to federal custody, on November 9, 2016, Velazquez pleaded guilty to two charges in the Middle District of Pennsylvania. See Nov. 9, 2016, Def.'s Mot. to Withdraw Plea, Fed. Crim. Case (ECF No. 256). On November 15, 2017, that court sentenced Velazquez to total term of 210 months in prison, to be followed by five years of supervised release. See Nov. 15, 2017 Judgment, Fed. Crim. Case (ECF No. 476). Velazquez is presently in federal prison serving that sentence. See Pet. (Doc. No. 1, at 7).

On January 30, 2018, Lisa Y. Terrell, a Parole Staff Technician with Pennsylvania Interstate Parole Services, sent a letter to Inmate Records at the United States Penitentiary Canaan in Waymart, Pennsylvania ("USP Canaan"), stating:

> Please lodge the attached certified warrant on our behalf as a detainer for violation of parole against the above-named inmate. We will extradite this offender back to our custody when he becomes available to our detainer. . . . Kindly notify us approximately sixty (60) days prior to release so appropriate extradition arrangements can be made. Should [Velazquez] be transferred to another facility, please ensure our detainer follows.

Jan. 30, 2018 Letter of Lisa Y. Terrell ("Terrell Letter") (Doc. No. 6-5, at 1). Attached to the Terrell Letter is a "Warrant For Arrest of Paroled Prisoner" (Doc. No. 6-5, at 2) issued

---

> technical rule violation which was completed on 4/28/2016. . . . I was then sentenced for a Direct Violation of Parole based on new criminal charges[.] After Change of Plea Hearing 11/09/2016 the State Parole had me sign an acknowledgement of charges for the Direct Violation. . ..

Pet. (Doc. No. 1, at 6). Petitioner also stated that, after his transfer to federal custody, he "was never returned to State Custody to face the Parole Board." Id. at 7. Petitioner acknowledges that at least one Pennsylvania parole violation is unresolved. See Apr. 23, 2025, FCI Berlin Informal Resolution (Doc. No. 1-4, at 2) (requesting that the BOP transfer him to Pennsylvania to "resolve my violation lodged against me"). Because the parties agree that Velazquez has at least one parole violation which remains unresolved in Pennsylvania, the court need not determine the specific status or disposition of any particular parole violation with which Velazquez was charged.

on January 31, 2018, by the Commonwealth of Pennsylvania Board of Probation and Parole ("PBPP").

On April 25, 2025, Velazquez filed a Request for Administrative Remedy ("RFAR") with the FCI Berlin Warden,[3] stating: "the B.O.P. needs to honor the [WHCAP] that was filed 10/29/15 and to return Jose Velazquez to Pennsylvania state parole's custody so he can clear any violations against him in order to lift [the] detainer lodged." Apr. 25, 2025 RFAR (Doc. No. 6-7); Declaration of Anthony Vladyka ("Vladyka Decl.") (Doc. No. 6-3, at 2). BOP Supervisory Correctional Systems Specialist Anthony Vladyka was assigned to investigate and respond to Velazquez's RFAR. See Vladyka Decl. at 2. Vladyka directed a Correctional Systems Officer to confirm with Pennsylvania state authorities that the January 2018 detainer was based on a pending Pennsylvania state parole violation, that Pennsylvania authorities wanted the detainer to remain in place, and that those authorities intended to take custody of Velazquez "at the expiration of his federal sentence." Id.

Vladyka states that he and his staff "had several conversations with [Velazquez] about a detainer placed upon him by the Commonwealth of Pennsylvania," and that Velazquez "repeatedly requested to be returned to Pennsylvania under the terms of the [Interstate Agreement on Detainers, 18 U.S.C. App. 2 § 1, et seq. ("IADA")] to contest this detainer." Id. at 1. Vladyka avers that he met with Velazquez on May 14, 2025, and explained to him that because the detainer was based on an unresolved parole violation, Velazquez could not invoke the IADA to effect his transfer to Pennsylvania

[3] Velazquez's RFAR (Doc. No. 6-7) is dated April 25, 2025, and stamped "Received May 2, 2025."

state custody, as the IADA only allows an incarcerated individual to request transfer to a state or local jurisdiction to challenge a detainer where the detainer is "for an untried charge," and that BOP policy "explicitly states '[t]he IADA does not apply to probation/parole violators.'" Id.; see also BOP Program Statement 5800.15, CN-1 (Doc. No. 6-6). After Vladyka informed Velazquez of the BOP policy and explained that the BOP would not transfer Velazquez back to Pennsylvania, Velazquez withdrew his RFAR. See Vladyka Decl. at 2.

## Discussion

### I. Claims and Summary Judgment Arguments

In his Petition, Velazquez challenges the BOP's refusal to return him to Pennsylvania, arguing that Pennsylvania has primary jurisdiction over him, that the BOP's authority to hold him in custody arises only from the WHCAP, and that he is therefore entitled to be transferred to Pennsylvania to resolve his parole violation there prior to the expiration of his federal sentence. See Pet. (Doc No. 1-2, at 2-4). Velazquez asserts that the unresolved charges and detainer in the PA Criminal Case negatively affect his BOP classification level, his eligibility for federal prison programs, and his potential eligibility for placement in a halfway house. See id. at 4.

The Respondent seeks summary judgment on the grounds that: (1) Velazquez has neither exhausted his administrative remedies, nor shown that exhaustion should be excused; (2) Pennsylvania relinquished its primary jurisdiction to federal authorities, and that, in any event, Petitioner cannot invoke the primary jurisdiction doctrine to obtain relief as the right to primary jurisdiction accrues to the sovereign, and not to the individual in custody; and (3) that Petitioner has no liberty interest in a particular

classification level, housing placement, or programming, while incarcerated, and therefore cannot demonstrate a violation of his due process rights based on the Pennsylvania detainer's impact on those aspects of his sentence.[4] Velazquez objects to the Respondent's motion for summary judgment, arguing that: (1) the exhaustion requirement should be excused because exhaustion of his administrative remedies was futile; (2) the BOP is not complying with the terms of the WHCAP by which it obtained temporary custody over him, and Pennsylvania retains primary custody over him, and he is therefore entitled to have his detainer resolved before completing his federal sentence; and (3) his due process rights have been violated by the impact of Pennsylvania's detainer on his classification, programming eligibility, and placement within the BOP.

## II. Exhaustion of Administrative Remedies

Ordinarily, a federal prisoner must exhaust his administrative remedies before seeking relief under § 2241.[5] See Cortez v. FCI Berlin, Warden, Case No. 25-cv-31-JL-

---

[4] In addition, the Respondent argues that transfer of a federal prisoner to a State that has lodged a detainer for that prisoner is governed by the IADA, and that Velazquez is not entitled to be transferred pursuant to the IADA because that statute is not available to resolve parole violations. Velazquez did not assert a claim in his Petition alleging that his rights under the IADA were improperly denied, and therefore, the court need not address whether the Respondent would be entitled to summary judgment on such a claim had the Petitioner asserted it.

[5] The BOP has established an administrative remedy process ("ARP") "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10.

> The ARP is a multi-tiered administrative appeal process that allows prisoners to seek formal review of their complaints. The ARP begins with attempted informal resolution and then, if necessary, a written complaint to institutional staff. Id. §§ 542.13–.14. An inmate dissatisfied with the

AJ, 2025 U.S. Dist. LEXIS 258782, at *3, 2025 WL 3617996, at *2 (D.N.H. Oct. 17, 2025), R&R approved, 2025 U.S. Dist. LEXIS 257277, at *1, 2025 WL 3611692, at *1 (D.N.H. Dec. 12, 2025). Because exhaustion is not jurisdictional, however, courts may create exceptions to the exhaustion requirement, including "'where the attempt to exhaust . . . would itself be a patently futile course of action.'" Browning v. Warden, FCI Berlin, No. 24-cv-269-JL-AJ, 2025 U.S. Dist. LEXIS 282099, at *4-*5, 2025 WL 5080997, at *2 (D.N.H. Aug. 18, 2025) (citation omitted), R&R approved sub nom. Browning v. USA, 2026 U.S. Dist. LEXIS 153496, at *1, 2026 WL 2021523, at *1 (D.N.H. July 10, 2026). '[F]ederal courts have some leeway' to relax this requirement . . .. [I]n considering whether to exercise this leeway, 'courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion.'" Carroll v. Hazlewood, Case No. 21-cv-139-PB, 2021 U.S. Dist. LEXIS 128036 at *5, 2021 WL 2877463, at *2 (D.N.H. May 26, 2021) (internal quotation marks and citations omitted), R&R approved, 2021 U.S. Dist. LEXIS 127225, at *1, 2021 WL 2857184, at *1 (D.N.H. July 7, 2021).

---

> warden's decision must appeal to the appropriate regional director within twenty calendar days of that decision. Id. §§ 542.14–.15. Following the regional director's review, an inmate may appeal that decision to the BOP's general counsel within thirty days of the regional director's response. Id. § 542.15. Once the inmate has received a decision from the general counsel, he has exhausted the BOP's administrative remedy process.

Cortez v. FCI Berlin, Warden, Case No. 25-cv-31-JL-AJ, 2025 U.S. Dist. LEXIS 25872 at *3, 2025 WL 3617996, at *2, R&R approved, 2-25 U.S. Dist. LEXIS 257277, at *1, 2025 WL 3611692, at *1 (D.N.H. Dec. 12, 2025).

Here, there is no dispute that Velazquez filed an administrative grievance concerning the BOP's refusal to transfer him but later withdrew his grievance before it was answered. See Vladyka Decl., at 2. The undisputed facts in the record, therefore, show that Velazquez did not fully exhaust each step of the BOP's administrative grievance process.

However, the record also demonstrates that Velazquez could not have obtained relief at any level of the ARP, as the BOP treated Velazquez's request for transfer to Pennsylvania to resolve his pending parole violation as arising under the IADA, and the BOP has adopted a policy disallowing IADA transfers for parole violations. The BOP, therefore, has "'indicated predetermination of the issue,'" and exhaustion of administrative remedies would, therefore, be futile. See Williams v. Warden, FCI Berlin, 793 F. Supp. 3d 412, 422 (D.N.H. 2025) (citation omitted). Because the futility exception to the BOP's exhaustion requirement applies here to relieve Velazquez of his obligation to exhaust his claims, the Respondent is not entitled to judgment on the issue of exhaustion.

## III. Primary Jurisdiction

"Under the primary-jurisdiction doctrine, '[t]he first sovereign to take physical custody of a defendant retains "primary jurisdiction" until releasing that jurisdiction.'" Lewis v. Warden, Fed. Corr. Inst., Case No. 16-cv-188-LM, 2018 U.S. Dist. LEXIS 30372, at *10, 2018 WL 1056637 at *4 (D.N.H. Jan. 30, 2018) (quoting Elwell v. Fisher, 716 F.3d 477, 481 (8th Cir. 2013), R&R approved, 2018 U.S. Dist. LEXIS 30086, at *1, 2018 WL 1061426, at *1 (D.N.H. Feb. 26, 2018). "'A defendant sentenced by both a state and federal sovereign will first serve the sentence of the sovereign with primary

jurisdiction.'" Trowell v. FCI Berlin, Civil No. 24-cv-039-SE-TSM, 2025 U.S. Dist. LEXIS 58599, at *15, 2025 WL 937252, at *6 (D.N.H. Feb. 21, 2025) (citation omitted), R&R approved, 2025 U.S. Dist. LEXIS 56931, at *1, 2025 WL 934879, at *1 (D.N.H. Mar. 26, 2025).

"[T]he decision to relinquish primary custody rests solely with the sovereign exercising priority." Pope v. Perdue, 889 F.3d 410, 415 (7th Cir. 2018) (citing Ponzi v. Fessenden, 258 U.S. 254, 260-62 (1922)). "'Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: (1) release on bail, (2) dismissal of charges, (3) parole,or (4) expiration of sentence.'" Elwell, 716 F.3d at 481 (citation omitted). However, "[i]n addition, the sovereign may, in an act of executive discretion, waive the right to primary jurisdiction and turn the defendant over to another sovereign." Trowell, 2025 U.S. Dist. LEXIS 58599, at *15, 2025 WL 937252, at *6 (quoting Stephens v. Sabol, 539 F. Supp. 2d 489, 493 (D. Mass. 2008)). "Because the decision to relinquish primary custody rests solely with the sovereign exercising priority," the court "look[s] to the intent of that sovereign to determine if it has relinquished primary custody through a transfer." Pope, 889 F.3d at 415. "In the absence of evidence that the transferring sovereign intended to maintain custody, we presume that the sovereign intended to relinquish it." Id. at 415-16. Surrendering primary jurisdiction is a function which rests exclusively in the executive branch of the government where primary jurisdiction is held. See Stephens, 539 F. Supp. 2d at 495 (citing Ponzi, 258 U.S. at 261-62)).

The Third Circuit, where the Pennsylvania state authorities relevant here are located, has not treated release on bail, dismissal of charges, parole, and expiration of sentence "as an exclusive list and has considered other 'factors' to determine whether a

state 'intended to relinquish its jurisdiction.'" Coleman v. United States, Civil Action No. 20-1769, 2020 U.S. Dist. LEXIS 129809 at *11, 2020 WL 4220489 at *4 (E.D. Penn. July 22, 2020) (citation omitted) . A sovereign's intent to relinquish primary jurisdiction may be gleaned from that sovereign's placement of a detainer for the return of a prisoner with the agency to whom it is alleged that sovereign relinquished custody of the prisoner. See Davis v. Sniezek, 403 F. App'x 738, 740 (3d Cir. 2010).

Here, Velazquez is correct that Pennsylvania state authorities obtained primary jurisdiction over him when they arrested him on a parole violation on October 29, 2015, and detained him pursuant to that violation, before federal authorities effected Velazquez's arrest on federal criminal charges. Velazquez is also correct that the federal authorities initially took custody of him pursuant to a WHCAP, and that a WHCAP does not divest the first-arresting sovereign of primary jurisdiction. However, a prisoner who is obtained by a second sovereign by virtue of a WHCAP only "remains in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the prisoner." E.T.G. v. Genalo, No. 26-CV-4274-SJB, 2026 U.S. Dist. LEXIS 165252, at *6, 2026 WL 2140351, at *2 (E.D.N.Y. July 25, 2026) (emphasis added) (quoting Pickett v. Warden McKean FCI, 726 F. App'x 104, 106 (3d Cir. 2018)). Accordingly, if Pennsylvania relinquished its primary jurisdiction to the federal government after the federal authorities arrested Velazquez pursuant to the authority of a WHCAP, such relinquishment would result in primary jurisdiction transferring to the federal government, and the WHCAP would no longer have legal effect, as the federal government would no longer just be borrowing Velazquez from Pennsylvania.

In this case, the January 30, 2018 Terrell Letter to the Inmate Records office at USP Canaan asks the federal prison authorities to "[p]lease lodge the attached certified warrant on our behalf as a detainer for violation of parole against [Velazquez]," and states that Pennsylvania state authorities "will extradite this offender back to our custody when he becomes available to our detainer." Terrell Letter (Doc. No. 6-5, at 1) (emphasis added). This letter demonstrates that the PBPP, the Pennsylvania state executive branch authority which arrested Velaquez in October 2015, no longer intended to retain primary jurisdiction over Velazquez, and instead intended to relinquish primary custody over Velazquez to the federal government, at least as of January 30, 2018.[6] And, as explained above, because it is only Pennsylvania's intentional actions which can relinquish primary jurisdiction, the PBPP's January 2018 concession that Pennsylvania did not then have custody of Velazquez is evidence that Pennsylvania's

---

[6] The Respondent attached to his summary judgment motion a BOP Designation and Sentence Computation Center form (Doc. No. 6-8) dated January 4, 2018, stating:

> [Velazquez] was being held as a technical parole violator & TOT USM via WRIT, at which time custody was relinquished and the warrant was lifted for the parole violation. The parole violation remains pending. PADOC has lodged a detainer & have [sic] made it apparent that the time from 10-28-15 to 11-02-15 will be applied toward the state parole violation sentence.

Doc. No. 6-8. That document is insufficient to support Respondent's claim that Pennsylvania relinquished its primary jurisdiction at this stage of the proceedings, as it is neither sworn nor signed, does not reveal the source of the information in the document, and does not demonstrate that the person who prepared the document was competent to testify to its contents. At best, the document consists of third-level hearsay. Accordingly, the court has not considered that document in its assessment of the instant motion.

executive, by that date, intentionally relinquished primary jurisdiction to federal prison authorities.

The October 2015 WHCAP, therefore, no longer determines Velazquez's legal custody. See E.T.G., 2026 U.S. Dist. LEXIS 165252, at *6, 2026 WL 2140351, at *2. Accordingly, for purposes of summary judgment, the Respondent has demonstrated that the undisputed facts in the record demonstrate that federal authorities have primary jurisdiction over Velazquez.[7]

IV. Due Process

Velazquez asserts that his Fifth Amendment due process rights have been infringed by the BOP's refusal to transfer him to Pennsylvania to resolve his parole violation detainer. Specifically, Velazquez states that the existence of Pennsylvania's detainer increases his classification score at the BOP and renders him ineligible for certain programming and/or release to a halfway house.

"With respect to prisoner classification, as a general principle, there is no constitutional right which entitles [a prisoner] to a particular institutional classification, nor is there a right to due process in the classification process." Riley v. O'Brien, No. 16-11064-LTS, 2016 U.S. Dist. LEXIS 120039 at *17-*18, 2016 WL 8679258, at *6 (D. Mass. Sept. 6, 2016); Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974) (absent unusual circumstances, [prisoners] do not have a constitutional right to any particular

[7] Because the court finds that the undisputed evidence in the record demonstrates that the federal government has primary jurisdiction over Velazquez, it need not consider at this time whether Velazquez could assert an argument for return to Pennsylvania if that state had primary jurisdiction over him, or whether only Pennsylvania can invoke its primary jurisdiction to effect such a transfer.

security classification). Further, prisoners do not have a protected liberty interest in either programming within a prison or in early release from custody where such early release is in the discretion of prison officials. See Decker v. FCI Berlin, Warden, No. 17-cv-015-PB, 2017 WL 4286211, at *2 (D.N.H. Aug. 28, 2017), R&R approved, 2017 WL 4286209 (D.N.H. Sept. 26, 2017); see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979) (no due process right to conditional release).

Velazquez cannot state a claim for a Fifth Amendment due process violation relating to the impact his Pennsylvania detainer may have on his classification, eligibility for programming, or ability to be released to a halfway house. Accordingly, the district judge should grant Respondent's motion for summary judgment on Velazquez's due process claims.

## Conclusion

For the foregoing reasons, the district judge should grant the respondent's motion for summary judgment (Doc. No. 6), dismiss the Petition (Doc. No. 1), and direct the Clerk to enter judgment and close this case. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion.

Only those issues raised in the objection to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

September 8, 2026

cc: Jose Luis Velazquez, III, pro se
Anna Dronzek, Esq.